# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5938 | **DATE** | 1/29/2003 |
| **CASE TITLE** | AJAX TOOL WORKS vs. CAN-ENG MANUFACTURING | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due          .

(3) ☐ Answer brief to motion due          . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion entered this day, defendant's motion for summary judgment is denied as to counts I, II, III, and IV of plaintiff's complaint and granted as to plaintiff's demand of consequential damages, lost productivity damages, and attorneys' fees. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 3 0 2003 date docketed | |
| | Docketing to mail notices. | | | 43 |
| | Mail AO 450 form. | | 6.Y docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/29/2003 date mailed notice | |
| JS | courtroom deputy's initials | | JS6 mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

)
Ajax Tool Works, Inc.,                        )
                                              )
            Plaintiff,                        )
                                              )
    v.                                        )        No. 01 C 5938
                                              )
Can-Eng Manufacturing Ltd.,                   )
                                              )
            Defendant.                        )
                                              )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On March 15, 2002, plaintiff Ajax Tool Works, Inc. ("Ajax") filed a four-count first amended complaint against Can-Eng Manufacturing Ltd. ("Can-Eng") alleging breach of express and implied warranties and breach of contract. On December 23, 2002, Can-Eng moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. Having considered this matter fully, for the reasons stated herein, Can-Eng's motion for summary judgment is denied in part and granted in part.

## STATEMENT OF FACTS[1]

Plaintiff Ajax, an Illinois corporation, is a manufacturer of chisels, hammers, and other tools. Defendant Can-Eng, an Ontario, Canada corporation, manufactures industrial furnaces, including a fluidized bed furnace, which is at issue in this case. In January 1996, at the request of Lindberg

---

[1] The facts assumed to be true for purposes of this summary judgment motion are derived from Can-Eng's Local Rule 56.1(a) Statement of Facts, Ajax's Local Rule 56.1(b) Statement of Additional Facts and Response, and Can-Eng's Response to Ajax's Statement of Additional Facts.

1

Technical and Management Services, a consulting firm retained by Ajax, Can-Eng submitted a

proposal in which it offered to supply a fluidized bed furnace to Ajax. Ajax did not accept this offer.

Over the course of 1996, Can-Eng submitted two follow-up proposals to Ajax, neither of which was

accepted. On January 27, 1997, Can-Eng sent Ajax a fourth proposal to sell a fluidized bed furnace

to Ajax for $90,000. After issuance of the proposal, the parties entered into an agreement whereby

Ajax purchased the furnace from Can-Eng. The terms of the January 27, 1997, proposal formed the

parties' contract.[2]

Page 4 of Can-Eng's fourteen-page proposal contained the following relevant terms and

conditions:

> WARRANTY - CAN-ENG in connection with apparatus sold will repair or replace,
> at the option of CAN-ENG, f.o.b. our factory, any defects in workmanship or

---

[2] In its memorandum in opposition to summary judgment, Ajax disputes that it accepted
Can-Eng's January 27, 1997, proposal. It argues that it made a counteroffer that Can-Eng
accepted on January 24, 1997, and that it never executed the contract containing the terms in
dispute. In its first amended complaint, however, Ajax alleges: "Following issuance of the
[January 27, 1997 (Compl. common allegations ¶ 8, Counts III and IV ¶ 8)] Proposal, Plaintiff
and Defendant contracted for the purchase and sale of [the furnace] . . . ." (Compl. common
allegations ¶ 10, Counts III and IV ¶ 11.) Ajax has thereby judicially admitted that the parties
entered into a contract after January 27, 1997. See Soo Line R. Co. v. St. Louis Southwestern
Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997) (holding that at summary judgment "judicial
efficiency demands that a party not be allowed to controvert what it has already unequivocally
told a court by the most formal and considered means possible."); Keller v. U.S., 58 F.3d 1194,
1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or
stipulations by a party or its counsel, that are binding upon the party making them. They may not
be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the
effect of withdrawing a fact from contention.'" (citations omitted)).
    Further, Ajax quotes from the proposal in support of its breach of express warranty and
breach of contract claims (See Count I ¶¶ 17, 18; Count III ¶¶ 18, 19) and attaches the proposal to
its complaint. See Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."). Although Ajax argues in its memorandum in
opposition to summary judgment that the proposal provisions do not apply, its judicial
admissions withdraw this fact from contention and establish that the terms of the January 27,
1997, proposal were part of the parties' contract and thereby govern this dispute.

material which may develop under proper and normal use during a period of ninety days from date of shipment or completion of installation if installation is undertaken by CAN-ENG. Such repair or replacement shall constitute a fulfillment of all CAN-ENG liabilities with respect to such apparatus. CAN-ENG shall not be liable for consequential damages. This warranty shall not apply if alterations or modifications of any nature are made by the Purchaser or if erection, installation or stating up is not performed under CAN-ENG supervision or under CAN-ENG approved methods.

CAN-ENG'S liability for the service of any refractories, alloy or other component parts manufactured by other than CAN-ENG but incorporated in the equipment furnished to Purchaser, shall be limited to the guarantee or liability to CAN-ENG of the manufacturer or supplier of such components. CAN-ENG is not responsible in any manner for operation of the equipment in Purchaser's plant.

CAN-ENG'S warranties or guarantees do not cover the process of manufacture or the quality of the product on which this equipment may be used.

. . . .

OTHER UNDERSTANDINGS - All previous oral or written agreements between the parties hereto which are contrary to or inconsistent with this proposal are hereby abrogated, it being understood that there are no agreements, guarantees or understandings which are in conflict with or inconsistent with this proposal. A purchase order covering the materials, apparatus or equipment specified herein shall be considered by both the Purchaser and CAN-ENG to be merely an acceptance of this Proposal and the Terms and Conditions set forth herein, and any other terms or conditions which may be printed or contained on such purchase order which are in conflict with or inconsistent with this proposal shall be not applicable. This agreement shall be governed by the laws of the Province of Ontario, Canada. Any terms and conditions herein, which may be in conflict with Ontario Law, shall be deleted, however, all other terms and conditions shall remain in force and effect.

Can-Eng shipped the furnace to Ajax on June 26, 1997, and it arrived at Ajax's plant on June 27, 1997. Ajax installed and started the furnace itself. Over the course of the next four years, Ajax experienced problems with the furnace, particularly that the furnace would not attain and hold the selected temperature, used an excessive amount of sand, and did not function properly with compressed air as the atmosphere.[3] The parties dispute exactly when and how often Ajax reported these problems to Can-Eng, but viewing the evidence in the light most favorable to Ajax, the non-

---

[3] As will be discussed infra, the parties dispute the extent of the problems.

3

moving party, as this court must, this court finds that Ajax lodged a considerable number of complaints with Can-Eng. It appears that all of these complaints were made more than ninety days after installation. In response to many of these complaints, Can-Eng attempted to repair or in some way remedy the problem, some, at least, at no cost to Ajax.

This court now considers Can-Eng's motion for summary judgment.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

It is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment; the nonmoving party must identify with reasonable particularity the evidence upon which that the party relies. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th

4

Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. Id.

ANALYSIS

I.     Governing Law

As a preliminary matter, this court must determine what law governs the parties' contract. In order to provide for the orderly conduct of international commerce, the United States, Canada, and the province of Ontario have adopted the United Nations Convention on the International Sale of Goods ("CISG" or "Convention"). 15 U.S.C.A. App. at 332; R.S.C. 1991, c.13; R.S.O. 1990, C.I.10. As Judge Lindberg pointed out, "federal caselaw interpreting and applying the CISG is scant." Usinor Industeel v. Leeco Steel Prods., Inc., 209 F. Supp. 2d 880, 884 (N.D. Ill. 2002). The CISG "applies to contracts of sale of goods between parties whose places of business are in different States when the States are Contracting States." CISG Art. 1 §1(a). By agreement, parties may exclude application of the CISG by expressly providing in the contract that the law of a non-CISG jurisdiction applies or that the CISG does not control. CISG Art. 6; R.S.O., c.I.10, s. 6.

In this case, it is undisputed that Ajax, an Illinois corporation, and Can-Eng, an Ontario corporation, are parties whose places of business are in different states and that these states are contracting states. Thus, unless the parties have opted-out, the CISG applies here. The parties' contract states that the "agreement shall be governed by the laws of the Province of Ontario, Canada." Obviously, this clause does not exclude the CISG. Further, although the parties have designated Ontario law as controlling, it is not the provincial law of Ontario that applies; rather, because the CISG is the law of Ontario, the CISG governs the parties' agreement. See Asante Techs., Inc. v. PMC-Sierra, Inc., 164 F. Supp. 2d 1142, 1150 (N.D. Cal. 2001) ("Defendant's choice

5

of applicable law adopts the law of British Columbia, and it is undisputed that the CISG *is* the law of British Columbia.").

## II.    Validity of Warranty

Although the CISG applies to the parties' contract, contrary to Ajax's argument, the terms and conditions and all limitations contained in the contract are not completely superceded by the provisions of the CISG. (Ajax's Mem. in Opp'n at 4.) The CISG does not preempt a private contract between parties; instead, it provides a statutory authority from which contract provisions are interpreted, fills gaps in contract language, and governs issues not addressed by the contract. In fact, Article 6 states that parties may, by contract, "derogate from or vary the effect of any of [the CISG's] provisions." CISG Art. 6. Accordingly, under the CISG, the terms of the parties' agreement control. In this case, the limited warranty, as part of the contract executed by the parties, lawfully limits Ajax's remedies. As will be discussed below, however, there are material facts in dispute as to whether Can-Eng has waived this limited warranty.

## III.    Claims Under the CISG

In counts I and II, Ajax alleges that Can-Eng breached an express and implied warranty under the Ontario Sale of Goods Act. (Count I ¶ 22; Count II ¶¶ 19, 20.) Can-Eng argues that because Ajax cited to the Ontario Sale of Good Act, instead of the applicable CISG, summary judgment in its favor on these counts is warranted. (Mem. in Support at 13-15; Reply at 5.) Under Seventh Circuit precedent, however, a plaintiff "cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all." Ryan v. Illinois Dep't of Children & Family Servs., 185 F.3d 751, 764 (7th Cir. 1999); see also Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992) (explaining that "the complaint need not identify a legal theory, and specifying an

6

incorrect theory is not fatal"). In the case at hand, "[i]t is of no moment therefore that [Ajax's] complaint identified the wrong statute as the basis for [its] claim, as long as [its] allegations gave notice of a legally sufficient claim and [it] brought the legal support for [its] claim to the district court's attention in [its] response to [Can-Eng's] summary judgment motion." Ryan, 185 F.3d at 764 (citations omitted). It is clear that under the CISG actions for breach of express and implied warranties are actionable. CISG 35(1); CISG 35(2). Thus, summary judgment on the basis that Ajax brought its claims under the Ontario Sale of the Goods Act rather than the CISG is denied.

IV.     Breach of Express Warranty (Count I) and Breach of Contract (Count III)

Page 7 of the January 27, 1997, proposal states that the "constant flow of particles assures tremendously uniform temperatures of +/-5° with in [sic] the work space." Further, the document, also on page 7, states that "the bed maintains excellent temperature uniformity throughout." Finally, page 11 states that one of the atmosphere capabilities is "Air." Ajax alleges that Can-Eng breached these express warranties and express provisions of the contract.

Articles 30 and 35 of the CISG require a seller to "deliver goods which are of the quantity, quality and description required by the contract . . . ." CISG Art. 35; see Art. 30 ("The seller must deliver the goods, hand over any documents relating to them and transfer the property in the goods, as required by the contract and this Convention."). The issue, therefore, is whether the good delivered, i.e., the furnace, complied with the express warranties of the contract. The parties dispute this point. (See Ajax's Resp. to Can-Eng's Specific Allegations of Fact ¶¶ 38, 39, 40; Can-Eng's Resp. to Ajax's Stmt. of Additional Facts ¶¶ 24, 31, 32, 34, 35, 36, 37, 40.[4]) Ajax asserts, inter alia,

_____

[4] Can-Eng argues that the statement in Michael J. Malget's affidavit is inconsistent with his deposition testimony. The affidavit does not state that the furnace "never worked," as Can-Eng alleges; rather, it says that the furnace "never worked properly *for any reasonable period* . . .

that the furnace did not maintain a constant temperature, used an excess amount of sand, and, contrary to the express warranty, did not function properly with air as the atmosphere to fluidize the furnace. Can-Eng disputes these allegations and maintains that the furnace worked as specified. Because there are material facts in dispute as to whether the furnace conformed to the express warranty and specifications in the contract, this court cannot grant summary judgment.

Can-Eng argues that although there may be material facts in dispute as to the condition of the furnace, the limited warranty precludes Ajax's recovery. Can-Eng asserts that its only obligation to Ajax was to repair or replace any defects in workmanship or material during a period of ninety days from the date of shipment. Because the alleged problems with the furnace occurred after the ninety-day warranty period, Can-Eng contends, Ajax is prohibited from proceeding on the claims it has asserted against Can-Eng.

Can-Eng advances a strong argument, and Ajax fails to address this argument under the CISG in its response. Because there are material facts in dispute as to whether Can-Eng has waived its right to enforce the limited warranty, however, this court cannot, as a matter of law, enforce the limited warranty. A waiver is the "intentional or voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right . . . ." BLACK'S LAW DICTIONARY 1580 (6th ed. 1990). As this court has explained above, the CISG is the governing law in this case. However, the parties did not present, and this court could not find, any cases under the CISG that address the issue of waiver. Article 7 of the CISG provides that in such a case where "[q]uestions concerning matters governed by this Convention which are not expressly settled in it

_____

." (Ajax's Stmt. of Additional Facts, Ex. 15 at ¶ 22 (emphasis added).) This court finds that this appears to be an accurate, consistent summary of Malget's deposition testimony and is therefore admissible.

8

are to be settled in conformity with the general principles on which it is based or, in the absence of such principles, in conformity with the law applicable by virtue of the rules of private international law." Here, under private international law, because of the parties' express choice-of-law provision, Ontario law would apply.

Under Ontario law, a party can waive "by its words and conduct" the right to rely on a limited warranty. General Refractories Co. of Canada Ltd. v. Venturedyne Ltd., 2002 WL 32938 at ¶ 157, 2002 Carswell Ont. 36 (Ont. S.C.J. 2002). If Can-Eng gave, after the ninety-day period, "repeated assurance that it would support" the furnace, a trier of fact could find that it waived its limited warranty. Id. at ¶ 159. Further, Ajax may be able to rely on the doctrine of promissory estoppel to preclude enforcement of the limited warranty. The General Refractories court stated that "[a] promise, whether express or inferred from a course of conduct, is intended to be legally binding if it reasonably leads the promisee to believe that a legal stipulation, such as strict time of performance, will not be insisted upon . . . ." Id. at ¶ 158 (quoting Owen Sound Pub. Library v. Mial Devs. Ltd. (1979), 102 D.L.R. (3d) 685 (Ont. C.A.), at 691).

The record shows that there are material facts in dispute as to whether Can-Eng, by providing service and repair, some of which at no charge, after the ninety-day limited warranty period, waived its limited warranty or whether Ajax can preclude enforcement under the doctrine of promissory estoppel. (See Ajax's Resp. to Can-Eng's Specific Allegations of Fact ¶¶ 38, 39, 40; Can-Eng's Resp. to Ajax's Stmt. of Additional Facts ¶¶ 21,[5] 24, 26, 30, 33, 34, 35, 36, 37, 41; Can-Eng's

_____

[5] For purposes of summary judgment, this court considered only Can-Eng's response, wherein it admits that it "provided Ajax with a thermocouple, *free of charge*, and reinstalled the original thermocouple." (Can-Eng's Resp. to Ajax's Stmt. of Additional Facts ¶ 21 (emphasis added).)

56.1(a) Stmt.[6] ¶¶ 35, 36, 37; Can-Eng's Mem. in Support at 9, 12.[7]) Consequently, summary

judgment must be denied as to the claims alleged in counts I and III of Ajax's complaint.

V.    <u>Breach of Implied Warranty (Count II) and Breach of Contract (Count IV)</u>

Article 30 of the CISG requires the seller to deliver goods "as required by . . . this

Convention." CISG Article 35(2) states:

> Except where the parties have agreed otherwise, the goods do not conform with the
> contract unless they:
>> (a) are fit for the purposes for which goods of the same description would ordinarily
>> be used;
>> (b) are fit for any particular purpose expressly or impliedly made known to
>> the seller at the time of the conclusion of the contract, except where the
>> circumstances show that the buyer did not rely, or that it was unreasonable for
>> him to rely, on the seller's skill and judgment . . . .

Along with the contract, Ajax alleges that Can-Eng has breached these implied warranties.

The same genuine questions of material fact as to whether the furnace complied with the express

warranties apply with equal force to the implied warranties. Therefore, this court cannot grant

summary judgment.

---

[6] Citations to Can-Eng's Local Rule 56.1(a) Statement are judicial admissions by Can-Eng that it serviced Ajax's furnace more than ninety days after shipment of the furnace.

As stated in this court's January 28, 2003, Minute Order, this court has stricken, and thus has not consider, the affidavit of James Brody. After granting Can-Eng's motion to strike, this court received Ajax's response to the motion to strike. Because granting the motion to strike has no effect on the disposition of this motion for summary judgment, the response is moot. However, if Can-Eng brings a motion in limine to preclude Brody's testimony at trial, Ajax may respond to such motion with the facts contained in its response to the motion to strike. This court will then rule upon such motion in limine at the final pre-trial conference.

[7] Can-Eng admits that it "provided Ajax with a *cost-free* replacement of the furnace's thermocouple after the furnace was started-up, even though that alleged problem arose *shortly after ninety days from shipment* . . . ." (Can-Eng's Mem. in Support at 12 (emphasis added).)

10

Can-Eng argues, however, that the limited warranty disclaimed any implied warranties. This court disagrees. Can-Eng misreads the Cook article cited in its reply memorandum. (Reply at 8.) Ms. Cook writes:

> Under CISG, the presumption is that the goods "are fit for the purpose for which goods of the same description would ordinarily be used" and are "fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract." However, this presumption is subject to an express agreement among the parties to the contrary. Under CISG, the only question is whether the disclaimer is a part of the agreement between the parties, arguably a tougher, yet ultimately fairer standard.

Susanne Cook, CISG: From the Perspective of the Practitioner, 17 J.L. & COM. 343, 347 (1998).

Contrary to Can-Eng's assertion, the parties' agreement does not contain an express disclaimer of any implied warranties. The parties have not agreed expressly that the furnace did not have to perform in a similar fashion as other like furnaces would perform or as Can-Eng expressly or impliedly made known that the furnace would. The parties' agreement simply limited Ajax's remedies. As stated above, this limited warranty provision is part of the parties' contract, but a genuine issue of material fact exists as to whether Can-Eng has waived, or is precluded by the doctrine of promissory estoppel, its right to rely on the limited warranty. Accordingly, summary judgment is denied as to the claims alleged in counts II and IV of Ajax's complaint.

VI.    Ajax's Recovery

Although issues of material fact preclude summary judgment as to liability, because there are no genuine issues of material fact as to some of Ajax's alleged damages and Can-Eng is entitled to judgment as a matter of law, summary judgment is appropriate in part.

11

A.    Consequential Damages

It is undisputed that the parties' agreement states that "CAN-ENG shall not be liable for consequential damages." As discussed above, such limited liability provision is enforceable under the CISG. Further, although Article 74 of the CISG provides for consequential damages, "[s]uch damages may not exceed the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in the light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach of contract." CISG Art. 74. Because Ajax did not address this point in its response memorandum, as best this court can tell, Ajax has not introduced any evidence that the consequential damages sought were foreseeable to Can-Eng. For these reasons and because there are no facts disputed, summary judgment is granted as to consequential damages.

B.    Lost Productivity Damages

As discussed above, a judicial admission by a party takes an issue out of contention. At a January 15, 2003, hearing before Magistrate Judge Keys, the court stated on the record that Ajax's counsel had taken "lost productivity," "lost profits," and "lost customers" "off the table." (Can-Eng's Resp. to Ajax's Stmt. of Additional Facts, Ex. F at 10.) In addition, the court's minute order of that date made it clear that "[d]uring oral argument plaintiff's counsel assured the defendant that it is not seeking damages for loss of business and profits." (Can-Eng's Resp. to Ajax's Stmt. of Additional Facts, Ex. F.) Based on Ajax's judicial admissions, there are no facts in dispute as to this issue; consequently, Can-Eng is entitled to summary judgment as to damages for loss of business and profits. See Soo Line R. Co., 125 F.3d at 483; Keller, 58 F.3d at 1198 n.8.

12

C.      Attorneys' Fees

Ajax's complaint seeks attorneys' fees "pursuant to the law of Ontario, Canada . . . ." (Prayers for Relief.)  The parties now agree, however, that attorneys' fees are a procedural matter governed by the law of the forum.   As the Seventh Circuit recently held, "'loss' in Article 74 does not include attorneys' fees . . . ." Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc., 313 F.3d 385, 389 (7th Cir. 2002).  Accordingly, because there is no genuine issue of fact for trial, summary judgment on this issue is granted.

## CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is denied as to counts I, II, III, and IV of plaintiff Ajax's complaint and granted as to Ajax's demand of consequential damages, lost productivity damages, and attorneys' fees.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE:  January 29, 2003

13